IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| CARLOS DELAROSA, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-20-3174 |
| COMSOURCE MANAGEMENT, INC., *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

Plaintiff Carlos Delarosa brought this civil action alleging that Defendants Comsource Management, Inc. ("Comsource") and Grosvenor Park IV ("GPIV") subjected him "to unequal terms and conditions of employment, discipline, harassment and discharge due to his race" in violation of Title VII of the Civil Rights Act of 1964 (Count I), 42 U.S.C. § 1981 (Count II), the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.* (Count III), and Montgomery County Code § 27-19 (Count IV). ECF No. 3; ECF No. 13-1. Pending before the Court is Defendant Comsource's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 7; Defendant GPIV's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 8; and Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 13.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Plaintiff's Motion to File Amended Complaint, ECF No. 13, is granted, in part, and denied, in part; Defendant Comsource's Motion to Dismiss, or in the

---

[1] Also pending before the Court is a consent Motion to Extend Deadline to File Response to Motions to Dismiss or in the Alternative for Summary Judgment, ECF No. 12, which the Court now grants.

1

Alternative, Motion for Summary Judgment, ECF No. 7, is granted; and Defendant GPIV's Motion to Dismiss, or in the Alternative, Motion for Summary Judgement, ECF No. 8, is denied, in part, and granted, in part.

## I. BACKGROUND

### A. Factual Background[2]

#### 1. The Parties

Plaintiff is an adult citizen of the state of Maryland and is African-American. ECF No. 13-1 ¶¶ 1, 12. Defendant Comsource is a Maryland corporation and is one of the largest locally owned property management companies in the Washington metropolitan area. *Id.* ¶ 2. Defendant Comsource has 1,000 employees. *Id.* Defendant GPIV is also a Maryland corporation and maintains a place of business at 3414 Morningwood Drive, Olney, Maryland. *Id.* ¶ 3. According to Plaintiff, Defendants Comsource and GPIV share and co-determine those matters governing the essential terms and conditions of Plaintiff's employment. *Id.* ¶ 4.

#### 2. The Employment Relationship

On or about April 2, 2019, Ramon Espin, the Community Associations Manager for Defendant Comsource, hired Plaintiff as the Building Engineer for Defendant GPIV, a condominium in Montgomery County, Maryland. *Id.* ¶¶ 10–11; ECF No. 15-1; ECF No. 7-4 at 2.[3] Plaintiff's role as the Building Engineer required him to provide services for common area maintenance and emergencies at Defendant GPIV. ECF No. 13-1 ¶ 25. During his employment, Plaintiff was paid $23 per hour and worked a normal schedule of 8 a.m. to 5 p.m. with one hour

---

[2] Unless otherwise stated, the background facts are taken from Plaintiff's proposed Amended Complaint, ECF No. 13-1, and are presumed to be true.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

allowed for lunch. *Id.* ¶ 13. Additionally, Plaintiff was instructed by Defendants "that he was also on call at all times, 24 hours a day, 7 days a week, and required to respond to all calls despite any personal activities in which he was engaged at the time he received such calls." *Id.* ¶ 22. Plaintiff reported his time to Defendant Comsource, who managed the payroll for Defendant GPIV and provided Plaintiff with his paycheck. *Id.* ¶¶ 14–15. Defendant Comsource also provided Plaintiff with an employee handbook and provided and managed Plaintiff's employee benefits. *Id.* ¶ 16.

Plaintiff's supervisors during his employment were Mr. Espin and Roxana Rizzone, the onsite supervisor from Defendant GPIV. *Id.* ¶ 17. "Both Ms. Rizzone and Mr. Espin had the ability to and did direct Plaintiff's work." *Id.* ¶ 18. Specifically, Plaintiff received calls and instructions for on-call work from both Mr. Espin and Ms. Rizzone. *Id.* ¶ 23. Moreover, Plaintiff was required to notify and receive approval from Mr. Espin for purchases of supplies, material, and equipment to perform maintenance work at Defendant GPIV. *Id.* ¶ 19. Finally, both Ms. Rizzone and Mr. Espin had the ability to discipline Plaintiff and/or terminate Plaintiff's employment. *Id.* ¶¶ 20–21.

### 3.     The Alleged Misconduct

Plaintiff's job required him to provide services for common area maintenance and emergencies at Defendant GPIV, but during Plaintiff's employment, Ms. Rizzone frequently instructed Plaintiff to provide maintenance and repair services outside this scope, including complete unit turnovers. *Id.* ¶¶ 25–26. Additionally, Ms. Rizzone instructed Plaintiff to purchase and install household maintenance items for unit owners, such as garbage disposals, but also instructed him that he could not charge the unit owners for these items or for his labor. *Id.* ¶ 27. Plaintiff raised concerns regarding "being forced to take on work outside of his job," but Ms.

Rizzone dismissed his concerns, instructing Plaintiff to do the work. *Id.* ¶ 28.

According to Plaintiff, Defendants also engaged in racially discriminatory behavior directed at Plaintiff. For example, on multiple occasions Ms. Rizzone, one of Plaintiff's supervisors, "called Plaintiff a gorilla, a derogatory descriptive term commonly understood to be racially charged." *Id.* ¶ 30. Additionally, Ms. Rizzone "made insensitive racially charged jokes at Plaintiff's expense, frequently commented on how Black people like to eat fried chicken and referred to rap music as noise and crazy music." *Id.* ¶ 31. Finally, Ms. Rizzone frequently told Plaintiff and others that "Hispanic people work harder than Black people." *Id.* ¶ 32.

Ms. Rizzone, in conjunction with Mr. Espin, terminated Plaintiff's employment on December 23, 2019. *Id.* ¶ 33. Ms. Rizzone notified Plaintiff that Monica Orega, an employee in Defendant Comsource's Human Resources Department, would answer any of Plaintiff's questions about returning company property, compensation, or benefits. *Id.* ¶ 34.

### B.   Procedural History

Plaintiff initiated this action in the Circuit Court of Maryland for Montgomery County on September 25, 2020, alleging race discrimination in violation of Title VII and 42 U.S.C. § 1981 (Count I), FEPA, Md. Code Ann., State Gov't § 20-601 *et seq.* (Count II), and Montgomery County Code § 27-19 (Count IV), as well as retaliation (Count III). ECF No. 1 at 1; ECF No. 3. On November 2, 2020, Defendants removed the action to this Court. ECF No. 1. On November 9, 2020, both Defendant Comsource and Defendant GPIV filed Motions to Dismiss, or in the Alternative, Motions for Summary Judgment. ECF No. 7; ECF No. 8. Plaintiff requested an extension of time to respond to Defendants' Motions on November 24, 2020, ECF No. 12, and then filed a Motion for Leave to File Amended Complaint on December 11, 2020, ECF No. 13. Plaintiff's proposed Amended Complaint dropped his retaliation claim, separated his Title VII

and 42 U.S.C. § 1981 claims (Count I and Count II, respectively), and retained his FEPA and Montgomery County Code claims (Count III and Count IV, respectively). ECF No. 13-1. Defendants opposed Plaintiff's Motion for Leave on December 28, 2020, ECF No. 14, and Plaintiff replied on January 12, 2021, ECF No. 15.

**II.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards[,]" and would therefore not survive a motion to dismiss pursuant to Rule 12(b)(6). *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)).

To state a claim that survives a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v.*

5

*McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). The Court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court must also "draw all reasonable inferences in favor of the plaintiff." *Id.* at 253 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). "[B]ut [the Court] need not accept the legal conclusions drawn from the facts, and [the Court] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Id.* (first alteration in original) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

### III. DISCUSSION

Plaintiff's proposed Amended Complaint alleges four claims based on racial discrimination, each relying on a separate legal authority: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; (2) 42 U.S.C. § 1981; (3) the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.*; and (4) Montgomery County Code § 27-19. ECF No. 13-1. In response, Defendants contend that Plaintiff's amendment is futile, ECF No. 14 at 3–5, and, in doing so, they rely primarily on the arguments articulated in their Motions to Dismiss, or in the Alternative, Motions for Summary Judgment. Specifically, they argue that: (1) Plaintiff has not established that Defendant Comsource is Plaintiff's employer, ECF No. 7 at 7–9; ECF No. 14 at 3–4; (2) Plaintiff has not established that Defendant GPIV is considered an "employer" under Title VII and FEPA, Md. Code Ann., State Gov't § 20-601 *et seq.*, ECF No. 8 at 7–8; ECF No. 14 at 5; and (3) Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6); ECF No. 7 at 9–12; ECF No. 8 at 8–11; ECF No. 14 at 4–5. The Court addresses each of Defendants' arguments below.

## A.     Defendants Comsource and GPIV as Plaintiff's Joint Employers

All four counts in Plaintiff's proposed Amended Complaint require the existence of an employment relationship.[4] 42 U.S.C. § 2000e-2(a) (prohibiting employers from engaging in discriminatory conduct); 42 U.S.C § 1981 (requiring a contractual relationship); Md. Code Ann., State Gov't § 20-606 (prohibiting employers from engaging in discriminatory conduct); Montgomery Code § 27-19 (same). However, an employee, such as Plaintiff, can have multiple employers pursuant to the joint employment doctrine. *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 408–09 (4th Cir. 2015). Specifically, two parties can be considered joint employers and thus both be liable under Title VII if they "share or co-determine those matters governing the essential terms and conditions of employment."[5] *Id.* (quoting *Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213 (10th Cir. 2002) (en banc)) (adopting the joint employment doctrine as articulated in other circuits as the law in the Fourth Circuit). "In other words, courts look to whether both entities exercise significant control over the same employees." *Id.* (internal

---

[4] Contrary to Defendants' assertions in their Motions and their opposition to Plaintiff's Motion, a defendant's status as an employer is not a jurisdictional issue and thus should not be analyzed under the Fed. R. Civ. P. 12(b)(1) standard. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) ("[W]e hold that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue."); *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 600 (D. Md. 2014) ("Although *Arbaugh* involved Title VII's statutory fifteen employee requirement for employers, its holding can be generalized to other elements of Title VII's definition of 'employer[,]' . . . [and] the question of [the defendants'] status as Plaintiffs' employer is better suited to a Rule 12(b)(6) analysis"). Consequently, it is inappropriate to consider evidence outside the pleadings as is allowed under Fed. R. Civ. P. 12(b)(1). *See Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Rather, the Court must take Plaintiff's factual allegations as true. *See Iqbal*, 556 U.S. at 678.

[5] The Court's analysis focuses on whether Defendants are joint employers of Plaintiff under Title VII. However, the same analysis is applicable to whether Defendants are joint employers under all four of Plaintiff's relied-upon legal authorities. *See Finkle v. Howard Cnty.*, 12 F. Supp. 3d 780, 784 (D. Md. 2014) ("FEPA is the state analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII." (citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007))); *Whittaker v. David's Beautiful People, Inc.*, No. DKC 14-2483, 2016 WL 429963, at *2 (D. Md. Feb. 4, 2016) ("Maryland courts construe . . . claims [under the Montgomery County Human Rights Act] similarly to those made under Title VII." (citing *Haas*, 914 A.2d at 756 (Battaglia, J., dissenting))); Montgomery County Code § 27-1(b) ("The prohibitions in this article are substantially similar, but not necessarily identical to prohibitions in federal and state law."); *see also McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 790 ("[A]n entity other than the actual employer may be considered a 'joint employer' for purposes of § 1981 if it exercised significant control over the employee.").

quotation marks omitted) (quoting *Bristol*, 312 F.3d at 1213). The Court finds such a joint employer relationship exists here.

The Fourth Circuit, in *Butler*, adopted a nine-factor test to assess whether an individual is jointly employed by two or more entities:

    (1) authority to hire and fire the individual;

    (2) day-to-day supervision of the individual, including employee discipline;

    (3) whether the putative employer furnishes the equipment used and the place of work;

    (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;

    (5) the length of time during which the individual has worked for the putative employer;

    (6) whether the putative employer provides the individual with formal or informal training;

    (7) whether the individual's duties are akin to regular employee's duties;

    (8) whether the individual is assigned solely to the putative employer; and

    (9) whether the individual and putative employer intended to enter into an employment relationship.

*Id.* at 414. While the Fourth Circuit noted that "none of these factors are dispositive and the common-law element of control remains the 'principal guidepost' in the analysis[,]" the Fourth Circuit also stated that "[t]hree factors are the most important." *Id.* Specifically, "[t]he first factor, which entity or entities have power to hire and fire the putative employee, is important to determining ultimate control." *Id.* Whereas, "[t]he second factor, to what extent the employee is supervised, is useful for determining the day-to-day, practical control of the employee." *Id.* Finally, "[t]he third factor, where and how the work takes place, is valuable for determining how similar the work functions are compared to those of an ordinary employee." *Id.* at 414–15.

In the instant case, Plaintiff claims that "Defendant Comsource and Defendant GPIV

8

share and co-determine those matters governing the essential terms and conditions of Plaintiff's employment." ECF No. 13-1 ¶ 4. In particular, with respect to Defendant Comsource, Plaintiff alleges that: (1) Plaintiff was hired by Mr. Espin, the Community Associations Manager of Comsource (*i.e.*, an agent of Defendant Comsource); *id.* ¶ 11; (2) "Plaintiff reported his time to Defendant Comsource[,]" and "Defendant Comsource managed the payroll for Defendant GPIV and provided Plaintiff with his paycheck[,]" *id.* ¶¶ 14–15; (3) "Defendant Comsource provided Plaintiff with an employee handbook and provided and managed Plaintiff's employee benefits[,]" *id.* ¶ 16; (4) Mr. Espin was one of Plaintiff's supervisors and, thus, "had the ability to and did direct Plaintiff's work[,]" *id.* ¶¶ 18, 23; (5) "Plaintiff was required to notify and receive approval from Mr. Espin for purchase of supplies, material and equipment to perform maintenance work at GPIV[,]" *id.* ¶ 19; (6) Mr. Espin had the ability to discipline Plaintiff, *id.* ¶ 20; (7) Mr. Espin had the ability to terminate Plaintiff's employment and did have a role in terminating Plaintiff's employment, *id.* ¶¶ 21, 33; and (8) Plaintiff was instructed to contact Defendant Comsource's Human Resource Department if he had any questions after his termination regarding the return of company property, compensation, or benefits, *id.* ¶ 34. With respect to Defendant GPIV, Plaintiff alleges that (1) Plaintiff was hired as the Building Engineer for Defendant GPIV, which "required him to provide services for common area maintenance and emergencies at Defendant Grovesnor Park IV[,]" *id.* ¶¶ 10, 25; (2) Ms. Rizzone, the onsite supervisor from Defendant GPIV (*i.e.*, an agent of Defendant GPIV), was one of Plaintiff's supervisors and, thus, "had the ability to and did direct Plaintiff's work[,]" *id.* ¶¶ 18, 23, 26–27; (3) Ms. Rizzone had the ability to discipline Plaintiff, *id.* ¶ 20; and (4) Ms. Rizzone had the ability to terminate Plaintiff and, in fact, did on December 23, 2019, *id.* ¶¶ 21, 33.

In sum, as to Defendant Comsource, Plaintiff has alleged that Defendant Comsource: (1)

had the authority to hire and fire Plaintiff; (2) had day-to-day supervision over Plaintiff, including the ability to discipline Plaintiff for misconduct; (3) furnished the equipment used by Plaintiff; and (4) had possession of and responsibility over Plaintiff's employment records, including payroll. As to Defendant GPIV, Plaintiff has alleged that Defendant GPIV: (1) had the authority to hire and fire Plaintiff; (2) had day-to-day supervision over Plaintiff, including the ability to discipline Plaintiff; (3) furnished Plaintiff's place of work; and (4) was the sole employer to whom the benefit of Plaintiff's work was directed. Thus, Plaintiff was jointly employed by Defendants Comsource and GPIV under the nine-factor test outlined in *Butler* and not, as Defendants claim, solely employed by Defendant GPIV.

Defendant GPIV also argues that it does not have a sufficient number of employees to meet the definition of an employer under Title VII and FEPA, ECF No. 8 at 7–8; ECF No. 14 at 5. Plaintiff admits that Defendant GPIV, with only two employees of its own, does not have enough employees to make it an "employer" under Title VII and FEPA, which require 15 employees. *See* ECF No. 15 at 2 (stating that "GP IV has only 1 other employee in addition to Plaintiff"); 42 U.S.C. § 2000e (defining "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year"); Md. Code Ann., State Gov't § 20-601(d)(1) ("'Employer' means (i) a person that: 1. is engaged in an industry or business; and 2. A. has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year[.]"). However, in some circumstances, if two defendants are joint employers, the numerosity requirement of Title VII may be met by adding the number of the two defendants' employees together. *King v. E. Shore Water, LLC*, No. SKG-11-1482m 2012 WL 3155647, at *7 n.10 (D. Md. July 31, 2012). Namely, under the joint

employer doctrine, "if [an] entity is already a formal employer," like Defendant GPIV here, "it can satisfy an otherwise unmet numerosity requirement by aggregating its own employees with individuals under its joint employ." *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011). Here, however, although Plaintiff has alleged that Defendant Comsource has 1,000 employees, ECF No. 13-1 ¶ 2, he has not alleged that any of those employees, other than himself, are under the joint employ of Defendant GPIV. Plaintiff thus cannot rely on the joint employment doctrine to meet the numerosity requirement.

In sum, because Defendant GPIV does not have fifteen employees and cannot be said—based on the Plaintiff's proposed Amended Complaint—to jointly employ any of Defendant Comsource's 1,000 employees, Defendant GPIV is not an employer for the purposes of Title VII and FEPA. Plaintiff's Title VII and FEPA claims against Defendant GPIV are therefore futile. Consequently, Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 13, is denied as to Counts I and III of the proposed Amended Complaint, to the extent those claims are alleged against Defendant GPIV and the original claims are dismissed.[6]

Nevertheless, it is undisputed that Defendant GPIV is still Plaintiff's employer for the purposes of Plaintiff's racial discrimination claims under 42 U.S.C. § 1981 and the Montgomery County Code. *See* 42 U.S.C. § 1981 (requiring only a contractual relationship between the

---

[6] The Court notes that, effective October 1, 2019, the definition of employer under FEPA changed, such that, "if an employee has filed a complaint alleging harassment," the entity may still be considered an employer as long as it "has one or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year[.]" Md. Code Ann., State Gov't § 20-601(d)(1)(i)2.B. However, the definitional change can only be applied prospectively "and may not be applied or interpreted to have any effect on or application to any cause of action arising before" October 1, 2019. 2019 Md. Laws 222. While Plaintiff has successfully alleged a hostile work environment claim—*i.e.*, a harassment claim, *see* Md. Code Ann., State Gov't § 20-601(h)—against Defendant GPIV, *see infra* § III.B, Plaintiff has not clearly alleged that any of the offensive conduct took place after October 1, 2019. Thus, the amended definition of employer under Md. Code Ann., State Gov't § 20-601, cannot save Plaintiff's FEPA claim against Defendant GPIV. However, should Plaintiff choose to further amend his complaint to include an allegation that some of the unwelcome conduct described below occurred after October 1, 2019, such an amendment would not be futile.

parties); Montgomery County Code § 27-6 ("*Employer* means any person who employs one or more individuals in the County, either for compensation or as a volunteer.").

**B.     Failure to State a Claim**

Defendants both argue that Plaintiff has failed to state a claim for race discrimination under any of the legal authorities on which he relies. ECF No. 7 at 9–12; ECF No. 8 at 8–11; ECF No. 14 at 4–5. There are several types of race discrimination claims that can be brought under Title VII, 42 U.S.C. § 1981, FEPA, and the Montgomery County Code—*e.g.*, failure to hire, failure to promote, disparate treatment, disparate impact, hostile work environment, and constructive discharge. While Plaintiff does not clearly articulate which type of discrimination claim he is attempting to plead in the instant action, based on the allegations in the proposed Amended Complaint, the Court construes Plaintiff's claims as alleging a racially hostile work environment.[7]

A racially hostile working environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (alteration in original) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To plead a hostile work environment claim the plaintiff "must show that there is (1) unwelcome conduct; (2) that is based on plaintiff's race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the

---

[7] Because Plaintiff does not sufficiently allege that either Defendant failed to hire him, failed to promote him, fired him, disciplined him, or took any other adverse employment action against him based on his race, a hostile work environment claim is the only form of racial discrimination claim that can withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and thus is the only form of racial discrimination claim that is not futile.

employer." *Id.* (citation omitted); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) ("While a plaintiff is not charged with pleading facts sufficient to prove h[is] case, as an evidentiary matter, in h[is] complaint, a plaintiff *is* required to allege facts that support a claim for relief." (emphasis in original)).[8]

### 1. Unwelcome Conduct

"The first element of a hostile environment claim, unwelcome conduct, is not a high hurdle." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 328 (4th Cir. 2018). As the Fourth Circuit has "repeatedly held, an employee can demonstrate that certain conduct is unwelcome simply by voicing her objection to the alleged harasser or to the employer." *Id.* at 328–29 (citation omitted). Additionally, "the nature of the conduct may indicate whether or not the conduct is unwelcome." *Id.* at 329 (citation omitted). In the instant case, Plaintiff alleges he was subjected to conduct that could not have been welcomed. Specifically, Plaintiff alleges that Ms. Rizzone called Plaintiff a gorilla, made insensitive racially charged jokes at Plaintiff's expense, and frequently told Plaintiff and others that Hispanic people worked harder than Black people. ECF No. 13-1 ¶¶ 30–32. "[I]t is difficult to see how any employee would welcome such derisive behavior directed at" him and others of his race. *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 314 (4th Cir. 2008). Thus, Plaintiff has sufficiently alleged the first element of a hostile work

---

[8] While the Court's analysis relies on case law relevant to a hostile work environment claim under Title VII, the analysis is equally applicable to Plaintiff's racial discrimination claims under 42 U.S.C. § 1981, FEPA, and the Montgomery Code. *See* Md. Code Ann., State Gov't § 20-606(a)(1) (using the same language to prohibit discrimination as Title VII uses); Montgomery County Code § 27-19(a)(1)(A) (same); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (stating that "[t]he same test applies to a hostile work environment claim asserted under 42 U.S.C. § 1981" as applies to a hostile work environment claim asserted under Title VII); *see also Fisher v. J.O. Spice & Cure Co., Inc.*, No. CCB-19-1793, 2020 WL 363347, at *2 (D. Md. Jan. 22, 2020) ("As FEPA is the state law analogue of Title VII, the court will apply its analysis of [the] Title VII claim to [the] FEPA claim also." (internal quotation marks and citation omitted)); *Whittaker*, 2016 WL 429963, at *2 ("Maryland Courts construe . . . claims [under the Montgomery County Human Rights Act] similarly to those made under Title VII."); *Magee v. DanSources Tech. Servs., Inc.*, 769 A.2d 231, 243 (Md. 2001) (describing the anti-discrimination provisions of the Montgomery County Code as "substantially similar" to the anti-discrimination provisions in Title VII and FEPA).

environment claim.

### 2. Race-Based Conduct

"To satisfy the second element of a hostile work environment claim, the plaintiff must demonstrate that he was harassed or otherwise discriminated against 'because of' his protected class." *Brown v. Bratton*, No. ELH-19-1450, 2020 WL 886142, at *14 (D. Md. Feb. 21, 2020) (citation omitted). Thus, in the instant case, Plaintiff "must show that 'but for' his race, he would not have been the victim of the alleged discrimination." *Smith v. Allied Sys., Ltd.*, No. CCB-99-224, 2000 WL 708909, at *5 (D. Md. May 8, 2000) (citing *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998)). Here, because the alleged unwelcome conduct described above is alleged to have related to Plaintiff's race, Plaintiff has sufficiently alleged that Ms. Rizzone's unwelcome conduct was based on his race. *See* ECF No. 13-1 at 30 (alleging that Ms. Rizzone called Plaintiff a gorilla, "a derogatory descriptive term commonly understood to be racially charged"); *id.* at 31 (alleging Ms. Rizzone made insensitive racially charged jokes—*e.g.*, frequently commenting on how Black people like to eat fried chicken and referring to rap music as noise and crazy music); *id.* at 32 (alleging Ms. Rizzone frequently said that "Hispanic people work harder than Black people"). Plaintiff has thus successfully pleaded the second element of a hostile work environment claim.

### 3. Severe or Pervasive Conduct

"The third element of a hostile environment claim requires that the offending conduct be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Strothers*, 895 F.3d at 331 (internal quotation marks and citation omitted). In the Fourth Circuit, "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *Sunbelt Rentals, Inc.*, 521 F.3d at 315. However, ultimately, "the question of

whether harassment was sufficiently severe or pervasive is quintessentially a question of fact." *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010) (internal quotation marks and citation omitted).

The "severe or pervasive" element of a Title VII hostile work environment claim has both subjective and objective components. *Sunbelt Rentals, Inc.*, 521 F.3d at 315. "First, the plaintiff must show that he 'subjectively perceive[d] the environment to be abusive.'" *Id.* (alteration in original) (quoting *Harris*, 510 U.S. at 21–22). Then, "the plaintiff must demonstrate that the conduct was such that 'a reasonable person in the plaintiff's position' would have found the environment objectively hostile or abusive.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998)).

As to the subjective component of the "severe or pervasive" element of a hostile work environment claim, Plaintiff's Amended Complaint contains sufficient factual allegations to support a finding that Plaintiff found Ms. Rizzone's conduct subjectively offensive.

As to the objective component, "[w]hether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Boyer-Liberto*, 786 F.3d at 277 (citation omitted). However, "[t]his objective inquiry is not, and by its nature cannot be, a mathematically precise test." *Sunbelt Rentals, Inc.*, 521 F.3d at 315 (internal quotation marks omitted) (quoting *Harris*, 510 U.S. at 22). "Rather, when determining whether the harassing conduct was objectively 'severe or pervasive,' [the Court] must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted) (quoting *Harris*, 510 U.S. at 23). "No single factor is dispositive, as the real social

impact of workplace behavior depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed[.]" *Id.* (cleaned up) (citations omitted).

In order to satisfy the "severe or pervasive" test, "[t]he behavior need not be *both* severe and pervasive: the more severe the conduct, the less pervasive the plaintiff need prove that it is." *Allen v. TV One, LLC*, No. DKC-15-1960, 2017 WL 4404408, at *7 (D. Md. Oct. 4, 2017) (emphasis added) (alteration in original) (internal quotation marks omitted) (quoting *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 669 n.15 (D. Md. 2008)). "To be sure, viable hostile work environment claims often involve repeated [*i.e.*, pervasive] conduct . . . . That is because in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Boyer-Liberto*, 786 F.3d at 277 (internal quotation marks and citations omitted)). To be pervasive, such conduct must be habitual; "simple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations and quotation marks omitted). However, "an isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." *Boyer-Liberto*, 786 F.3d at 277 (internal quotation marks and citations omitted)).

Here, Plaintiff has sufficiently alleged that Ms. Rizzone's conduct was severe or pervasive. Plaintiff alleges that Ms. Rizzone (1) called him a gorilla "[o]n multiple occasions," ECF No. 13-1 ¶ 30; (2) made racially insensitive jokes including "frequently comment[ing] on how Black people like to eat fried chicken and refer[ing] to rap music as noise and crazy music[,]" *id.* ¶ 31; and (3) "frequently t[elling] Plaintiff and others that Hispanic people work harder than Black people[,]" *id.* ¶ 32. These allegations demonstrate offensive conduct that is

both frequent and severe. *See Boyer-Liberto*, 786 F.3d at 277 (holding that the use of the racial epithet "porch monkey" twice was sufficient to establish racially hostile work environment); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 297 (4th Cir. 2004) (holding that conduct was severe or pervasive when supervisors repeatedly called the plaintiff and other black employees "boy, jigaboo, nigger, porch monkey, Mighty Joe Young," and "Zulu warrior"). Thus, Plaintiff has sufficiently alleged the third element of a hostile work environment claim.

### 4. Conduct Imputable to the Employer

The fourth element of a hostile work environment claim is that the offensive conduct must be imputable to the employer. "If the harasser is a co-worker, then the employee must show that the employer was 'negligent in controlling working conditions'—that is, the employer 'knew or should have known about the harassment and failed to take effective action to stop it.'" *Strothers*, 895 F.3d at 332 (citation omitted). However, if the harasser is a supervisor, "then the employer may be . . . vicariously liable for the supervisor's actions." *Id.* at 333; *see also Faragher*, 524 U.S. at 807 ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.").

Here, the analysis differs with respect to the two Defendants. Regarding Defendant GPIV, Plaintiff has alleged that Ms. Rizzone, the alleged harasser and an agent of Defendant GPIV, was Plaintiff's direct supervisor. *See* ECF No. 13-1 ¶¶ 17, 26 (describing Ms. Rizzone as Defendant GPIV's onsite supervisor); *id.* ¶ 17 (describing Ms. Rizzone as Plaintiff's supervisor); *id.* ¶¶ 30–32 (describing Ms. Rizzone's alleged harassing behavior). Thus, Plaintiff has alleged that Ms. Rizzone's unwelcome, race-based, "severe or pervasive" conduct was imputable to Defendant GPIV and has sufficiently alleged a hostile work environment claim against

Defendant GPIV under 42 U.S.C. § 1981 and the Montgomery County Code.[9] *See supra* note 8 (stating that the Title VII hostile work environment analysis is equally applicable to Plaintiff's § 1981 and Montgomery County Code claims). Therefore, to the extent Plaintiff's racial discrimination claims under § 1981 and the Montgomery County Code are alleged against Defendant GPIV in Plaintiff's Amended Complaint (Counts II and IV), those claims are not futile.

However, Plaintiff has not alleged conduct imputable to Defendant Comsource. Even though Plaintiff has sufficiently alleged that Defendants jointly employ Plaintiff, that does not establish that Ms. Rizzone is a "supervisor within [Defendant Comsource's] hierarchy, although [s]he clearly is within [Defendant GPIV's]."[10] *Takacs v. Fiore*, 473 F. Supp. 2d 647, 656–57 (D. Md. 2007). Consequently, Defendant Comsource cannot be held liable for Ms. Rizzone's conduct. Rather, Ms. Rizzone should be treated as co-worker for the sake of determining whether her conduct should be imputed to Defendant Comsource. *Id.* In turn, the test for imputability where the harasser is a co-worker is "a negligence standard, with liability only attaching if the employer 'knew or should have known about the harassment and failed to take effective action to stop it.'" *Id.* (quoting *Ocheltree v. Scollon Prod., Inc.*, 335 F.3d 325, 333–34 (4th Cir. 2003)). Plaintiff has not alleged that he told anyone about the alleged harassment, nor has he alleged any other reason that Defendant Comsource should have known about Ms. Rizzone's discriminatory conduct. Therefore, Ms. Rizzone's conduct is not imputable to Defendant Comsource. Because

---

[9] As discussed above, the Court denies Plaintiff's Motion for Leave to File Amended Complaint as to Plaintiff's Title VII and FEPA claims against Defendant GPIV because Defendant GPIV does not qualify as an "employer" under the definitional provisions of Title VII and FEPA. *See supra* § III.A.

[10] In his Reply, Plaintiff asserts that Ms. Rizzone is a joint employee of both Defendant Comsource and Defendant GPIV. However, Plaintiff has not alleged any facts in his Amended Complaint to support that assertion. "It is well-established that parties cannot amend their complaints through briefing[.]" *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBank at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

Plaintiff has not set forth sufficient factual allegations to satisfy the fourth element of a hostile work environment claim as to Defendant Comsource, Plaintiff's racial discrimination claims under Title VII, § 1981, FEPA, and Montgomery County Code are futile as to Defendant Comsource and Defendant Comsource's Motion to Dismiss is granted as to those claims.

\*\*\*

Because Defendant GPIV is not an "employer" as defined by Title VII and FEPA, Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 13, is denied as to Plaintiff's Title VII and FEPA claims, Counts I and III of the proposed Amended Complaint, to the extent those claims are alleged against Defendant GPIV, and those claims are dismissed. However, because Plaintiff has otherwise satisfactorily alleged all four elements of a hostile working environment claim as to Defendant GPIV, the Court grants Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 13, as to Plaintiff's 42 U.S.C. § 1981 and Montgomery County Code claims, Counts II and IV of the proposed Amended Complaint, to the extent those counts are alleged against Defendant GPIV.

Because Plaintiff has failed to sufficiently plead that Ms. Rizzone's unwelcome conduct is imputable to Defendant Comsource, the Court denies Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 13, as to all four counts in the proposed Amended Complaint, to the extent those counts are alleged against Defendant Comsource and those counts are dismissed.[11]

---

[11] The Court notes that in its opposition to the Motion to Amend, Defendants indicated that if the Motion to Amend is granted, they would file Motions to Dismiss the Amended Complaint that would be "nearly identical" to the Motions to Dismiss the Complaint previously filed. ECF No. 14 at 2. The Court strongly advises against that approach as it relates to the surviving claims because the Court has considered the arguments in Defendants' Motions to Dismiss in determining whether Plaintiff's claims are futile. *Davison*, 912 F.3d at 690 (stating that "[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards[,]" and would therefore not survive a motion to dismiss pursuant to Rule 12(b)(6) (quoting *Katyle*, 637 F.3d at 471)).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 13, is grant, in part, and denied, in part; Defendant Comsource's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 7, is granted; and Defendant GPIV's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 8, is denied, in part, and granted, in part. A separate Order shall issue.

Date: <u>August    30, 2021</u>                                  <u>   /s/                                        </u>
                                                                                     GEORGE J. HAZEL
                                                                                     United States District Judge